[Civ. No. 7694. First Appellate District, Division One.—March 30, 1931.]

STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Plaintiff and Respondent, v. HENRY S. WOOLNER, Defendant and Appellant; JOSEPH W. CAMP et al., Defendants and Respondents.

[Civ. No. 7695. First Appellate District, Division One.—March 30, 1931.]

STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Plaintiff and Respondent, v. HENRY S. WOOLNER, Defendant and Appellant; C. W. CAMP et al., Defendants and Respondents.

Richard A. Dunnigan for Defendant and Appellant.

Hibbard & Kleindienst and H. P. Hibbard for Defendants and Respondents.

Lawler & Degnan for Plaintiff and Respondent.

DOOLING, J., *pro tem.*—By stipulation the appeals in these two actions have been submitted upon one set of briefs. The issues and findings in both cases are practically identical and it will only be necessary in this opinion to consider the appeal in the action numbered in this court 7694.

Appellant Woolner is the owner in fee of certain land upon which is located a producing oil-well. This well was originally leased by appellant to Federal Drilling Company for a period of twenty years with a covenant against assignment without the written consent of the lessor. The lease was subsequently assigned to respondent Johnson and his wife with appellant's written consent, it being expressly agreed that the assignees could not make an assignment of their interest without appellant's consent thereto in writing. During August and the early part of September, 1927, respondent Johnson was being pressed by numerous creditors and in an effort to raise money he opened negotiations with appellant to sell appellant his interest in the well covered by this lease and another well in which appellant had no interest. During these negotiations appellant made an offer to Johnson which the latter was unwilling to accept and thereupon appellant said to Johnson: "If you can get any better deal, go ahead and do it." Treating this statement as a consent to the assignment of the lease, Johnson sold and assigned his interest in the lease together with the other well to respondent Camp for $50,000; $10,000 in cash and twenty promissory notes for $2,000 each. The $10,000 was paid directly to Johnson and the notes were delivered to respondent Kleindienst, who was acting as attorney for both Camp and Johnson. This transaction was finally consummated about September 6 or 8, 1927, and about that time respondent Camp entered into possession and com-

menced the operation of the wells. On September 13, 1927, appellant sent Camp a letter calling his attention to the provisions against assignment of the lease without his written consent, and notifying Camp that such consent in writing had not been given. Kleindienst, learning of appellant's objection to the assignment, thereupon determined for the protection of his client Camp, to hold Camp's promissory notes intact until the matter was satisfactorily adjusted.

Matters remained so until September 17, 1927, when appellant visited the property and there met Camp. On that occasion, according to Camp's testimony, appellant said to him: ''Since I found out who you are and know you are responsible, it is all right. Don't pay any attention to that letter I wrote you.'' At the same time appellant arranged with Camp to take charge for him of the pumping of another well in the vicinity which had previously been handled for appellant by Johnson. Pursuant to his conversation with Camp, appellant notified Kleindienst that he was satisfied with the assignment to Camp and would execute a written consent to the assignment, and Kleindienst thereupon, deeming it safe to do so, turned over Camp's notes aggregating $18,000 to creditors of Johnson. A few days later appellant, again becoming dissatisfied for some reason, refused to execute a written consent to the assignment and notified all parties that he considered the lease at an end. Camp continued in the operation of the well and the oil therefrom was delivered to Standard Oil Company of California. Under the lease appellant was entitled to forty-five per cent of the proceeds and the lessee to the balance. Standard Oil Company of California accordingly paid forty-five per cent of the purchase price of the oil to appellant and commenced this action in interpleader to have it determined to whom the balance due for such oil should be paid.

We have ignored conflicts in the evidence in the above recital because the trial court based its findings on the facts herein stated. Judgment against appellant followed.

That this judgment was justified by the facts as so found we think sufficiently appears. ''The law is that where there is a clause in a lease that it shall not be assigned without previous written consent of the lessor, and this covenant is breached, the lessor has only the option to

forfeit the lease for such breach; the assignment is not void, but voidable only at the option of the lessor, which option he must exercise according to the law." (*Buchanan* v. *Banta*, 204 Cal. 73, 76, 77 [266 Pac. 547, 548], and cases there cited.) On September 17, 1927, when appellant met Camp on the property Camp, therefore, held under an existing though voidable assignment. Appellant was in a position where he might either insist on a forfeiture or waive it. He apparently elected to waive it. Instead of standing upon his rights appellant informed Camp and Camp's attorney, Kleindienst, that he was satisfied with the assignment; and in reliance upon this statement Kleindienst delivered Camp's notes to creditors of Johnson. Having led Camp, through his agent and attorney, Kleindienst, to act to Camp's prejudice by these statements, appellant is estopped now to repudiate them. "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., sec. 1962, subd. 3.) The facts of this case are in essence not unlike those in *Carpy* v. *Dowdell*, 115 Cal. 677 [47 Pac. 695, 697]. In that case a bank which held a chattel mortgage upon a stock of wine permitted the wine to be sold to a purchaser who agreed to pay the price of the wine to the bank for the mortgagor's account. The court held the bank estopped by these facts to foreclose the mortgage. In that case the court quoted with approval the following language from *Dickerson* v. *Colgrove*, 100 U. S. 578, 580 [25 L. Ed. 618] : "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both."

Appellant cites *Biddle Boggs* v. *Merced Min. Co.*, 14 Cal. 279, 367, where the four elements of estoppel *in pais* are stated thus: "First, that the party making the admission by his declarations or conduct, was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless

and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and, fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved." Appellant argues that none of these four elements is present in this case. As to the first he states that at the time appellant expressed himself as satisfied with the assignment he believed that The Camp Oil Company was the assignee. There is evidence from which this conclusion might be drawn, but it is contradicted by appellant's own testimony that he first learned of the assignment from Kleindienst at which time, quoting: "I said 'What is his name?' and he said 'It is a man by the name of Camp.'" The trial court having found against appellant on this point he is concluded by that finding, so long as it finds support in the evidence. ▮ As to the second element, it is not the law that fraud must exist at the time the declaration is made to support an estoppel. "All that is meant in the expression that an estoppel must possess an element of fraud is, that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. . . . There need be no precedent corrupt motive or evil design." (*Seymour* v. *Oelrichs,* 156 Cal. 782, 796 [134 Am. St. Rep. 154, 106 Pac. 88, 95]; *Comer* v. *Associated Almond Growers,* 101 Cal. App. 687, 690 [282 Pac. 532]; *Anderson* v. *Hubbel,* 93 Ind. 570 [47 Am. Rep. 394].) As to the third element, Camp and Kleindienst had and could have no means of knowing whether appellant was satisfied with the assignment other than from appellant's own declaration; and the fourth element clearly appears, that they relied on such declaration and will be injured by allowing its truth to be disproved. In view of our conclusion on this phase of the case, other grounds urged in support of the judgments need not be considered.

Judgments affirmed.

Tyler, P. J., and Cashin, J., concurred.