[Civ. No. 9645.    First Appellate District, Division One.—February 5, 1936.]

ELSIE C. TUCK, Appellant, v. KRIST GUDNASON, Respondent.

Snook & Snook & Chase for Appellant.

Decoto & St. Sure and James E. Waddell for Respondent.

McNUTT, J., *pro tem.*—Krist Gudnason was an extensive dealer in women's wash dresses which were made up for him by shops in San Francisco and Oakland from pattern materials furnished by him. Elsie Tuck, a Chinese, operated a small hemstitching and dressmaking shop in Oakland, working for no person in particular. Gudnason had her fabricate some dresses, patterns for which he furnished, and was so pleased with her workmanship that he proposed that she abandon her business and obtain large quarters with sufficient machinery to devote her time exclusively to the manufacture of his products, upon a guaranteed minimum, and for a period of five years. It is claimed that about the sixth day of December, 1929, at Oakland, she and Gudnason entered into an oral contract adapted to accomplish such purpose; that he breached the contract, in consequence of which she brought suit. At the conclusion of the plaintiff's case the defendant moved for a nonsuit. The court deferred ruling until the end of the case. After the evidence was all in the plaintiff moved for leave to amend her complaint to conform to proofs, which motion was granted and so the pleading upon which she stood on the granting of the motion for nonsuit was her third amended complaint.

The first question presented is as to whether the oral agreement pleaded was a contract or merely a naked pact ineffective for want of mutuality of obligation. Since if a contract it was within the statute of frauds, the next question is whether the defendant is estopped to set up the statute because so doing would, in effect, accomplish a fraud upon her, she having so altered her position to her disadvantage, to fit and equip herself to carry out the contract that the assertion of the statute would work an unconscionable wrong upon her.

Briefly, the contract, which we take from the allegations of the third amended complaint, was as follows: At about December 6, 1929, at Oakland, the parties entered into an oral contract by the terms of which the defendant Gudnason agreed that in consideration of the plaintiff Tuck discontinuing the dressmaking business which she had been conducting

at a named place in that city, and of entering into a lease from the owner of larger premises in said city for a term of five years, commencing January 1, 1930, she to be personally liable for the rents reserved in said lease, and of her so remodeling the leased premises as to fit the same for a wash dress factory, and of purchasing equipment sufficient to enable her to turn out a minimum of 300 dozen dresses per week, and of thereafter so increasing the plant to produce a greater number, and of her devoting her entire time to the manufacture of wash dresses for defendant, to the exclusion of other persons, the defendant, from and after the 1st of January, 1930, would employ plaintiff and plaintiff's equipment to manufacture such dresses from cloth furnished and designed and cut to size and pattern by defendant for that purpose, up to plaintiff's capacity during the time plaintiff was instructing and training workers for approximately six months after said date, at minimum prices ranging from $3.25 per dozen up to $6 per dozen, according to style, the exact price per dozen for the several styles to be agreed upon by the parties as the style might, from time to time, change, the minimum, however, to be $3.25 per dozen, and that when plaintiff should have completed the training of workers sufficient to enable her to turn out from her factory 300 dozen per week, which training period the parties to the agreement approximated to be six months, defendant would, for a period of five years after January 1, 1930, employ her and her factory and equipment, to the exclusion of other persons, to turn out dresses for him from patterns furnished by him for that purpose. Such manufacture should not exceed plaintiff's capacity of 300 dozen per week at the prices above indicated.

The evidence shows that plaintiff, though under a lease at the time she was approached by the defendant, abandoned her then location, though, of course, still liable under the lease, and after leasing for five years premises adapted to the purposes of the contract, obligated herself to a considerable extent for equipment and proceeded to the performance of the agreement. The defendant, under the evidence, supplied her with materials and orders for some time; during the period of training of operators she turned out all the work he gave her. After that period for but one month did he give her 300 dozen patterns a week to fabricate, and under one excuse or another never lived up to his agreement, and,

finally, gave her so little work that her income was not sufficient to enable her to meet her obligations on machinery and under the lease, with the result that she lost the machinery and abandoned the premises, though liable on the lease, and brought the present action for damages.

Admittedly this contract, since not to be performed within one year, is within the statute of frauds. The grounds assigned on motion for nonsuit are that estoppel to set up the statute of frauds as a special defense was defectively pleaded; that estoppels must be mutual. The court granted the motion, and from the colloquy as disclosed by the transcript, the court interpreted the second ground, to wit: Want of mutuality of estoppel, to mean that there was nothing in the contract to show "that she would be compelled to do his work", or, in other words, that, the statute of frauds aside, there was no contract because of want of mutuality of obligation.

█ That there was mutuality of obligation is evident. The books are replete with cases illustrative of agreements of this general character. It would serve no useful purpose to discuss any extended number of them. They illustrate situations wherein manufacturers of iron products agree to purchase all their pig iron from named producers, or where canners of fruit agree to take all their cans from certain manufacturers. Under the tests laid down in *Bartlett Springs Co.* v. *Standard Box Co.*, 16 Cal. App. 671 [117 Pac. 934], and cases therein discussed, it would seem that this agreement is not *nudum pactum* but was a binding contract. The Bartlett Springs Company had entered into an agreement with the box company whereby the latter was to sell and the former was to purchase certain kinds of wooden boxes to the entire extent of the springs company's demand for the period of one year from the date of the contract. The market price of boxes increased and the box company only partly performed its contract, filling an order for only a small number of boxes. The springs company purchased boxes elsewhere as needed during the contract period and sued to recover from the box company the difference between the contract price and that at which it had bought boxes elsewhere. Judgment went for the plaintiff and the same was affirmed.

The court therein quotes at length from 9 Cyc. 327, part of which follows:

"The most frequent example of this principle is when one offers to supply another with such goods of a certain kind as he may choose to order or may 'wish' during a certain time and the other accepts the offer. Here there is no consideration for the promise or offer, for the promisee has not bound himself to anything and has incurred no legal liability at all. The correct view of the case is that there is no agreement binding on the promisor, but simply an offer on his part which may be accepted by giving an order until such time as it is actually withdrawn or expires by limitation of time. Where, however, the acceptance does really impose any obligation on the accepter, then a consideration is present and a binding contract results; and this is so wherever the accepter's freedom of action is in any way limited."

Testing the instant agreement by this doctrine it appears that the acceptor's (Tuck's) freedom of action is limited. She so circumscribed the sphere of her own endeavors by agreeing to work for and to fabricate dresses exclusively for Gudnason as to constitute a consideration for his agreement to give her patterns up to 300 dozen per week.

We gather from the briefs that respondent's contention is that notwithstanding Gudnason was to furnish her a minimum during the contract period she did not bind herself to manufacture anything. On the contrary, not only did she bind herself to manufacture such articles as he might send her for that purpose, but the limitations upon her activity, that is, her agreement to work for no one but him, is the consideration which makes this agreement a contract.

It is again urged, by respondent, that the contract wants certainty in that the price per dozen of the garments is not fixed. It is elementary, however, that that is certain which can be made certain, and while there was a price differential here it was not fraught with the element of uncertainty because the price varied between a minimum and a maximum according to the character of the sample to be furnished.

We come now to the question of estoppel to set up the statute of frauds. Respondent says that fraud is not pleaded and fraud is never to be presumed. Granting the truth of such assertions, estoppel does not consist of or grow

out of any intentional fraud committed, as in this case, by the dress dealer upon the dress fabricator, but rather it exists where she has so altered her position to her disadvantage, relying upon promises made by him that it would be unconscionable and would be in the nature of a fraud upon her to permit him to assert that the contract must be in writing.

This rule is illustrated in the case of *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154]. Seymour held the position of captain in the police department; he had been urged by Charles L. Fair and others to resign his position and enter the services of the Fair heirs; that after some discussion between him and Fair and Oelrichs, husband of one of the defendants, he was promised a ten-year contract for $300 a month. Having assented and resigned his public position he took the place of superintendent of buildings. His salary was paid for some time and he was discharged. There is a difference between the two cases in that in the Seymour case they agreed to reduce the agreement to writing, which they never did. However, it is not apparent that that difference alone renders inoperative the principle that it would be unconscionable to permit the respondent in this case to plead the statute where she had altered her position in the manner above indicated in reliance upon respondent's promise to supply her with work over a period of five years.

"As to the second element, it is not the law that fraud must exist at the time the declaration is made to support an estoppel. 'All that is meant in the expression that an estoppel must possess an element of fraud is, that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. . . . There need be no precedent corrupt motive or evil design.' (*Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154]; *Comer* v. *Associated Almond Growers*, 101 Cal. App. 687 [282 Pac. 532].)" (*Standard Oil Co.* v. *Woolner*, 113 Cal. App. 66, at p. 70 [298 Pac. 77].)

Respondent contends that in order that plaintiff should have the benefit of her asserted estoppel there must have been mutual estoppels in this case and cites, among other cases, *Spinney* v. *Downing*, 108 Cal. 666 [41 Pac. 797]. But the cases relied upon by respondent are those in which there was no mutuality of obligation so that, so far as his authorities

are concerned, mutuality of estoppel is used synonymously with want of mutuality of obligation, and, hence, with absence of contract.

Respondent makes the further point that, since there is a difference between the contract as set forth in the third amended complaint and that contained in the previous complaint or complaints, there must have been an abandonment by the parties of the original contract, and that the abandoned contract may not be revived. This argument answers itself. The court permitted an amendment of the complaint to conform to proofs. Therefore, if the amended complaint, the only one before the court, stated a cause of action grounded upon a good contract the doctrine of abandonment is unavailable, and if there are allegations in the earlier complaints inconsistent with the testimony given by the plaintiff and by her witnesses at best a conflict in testimony is involved.

The record is voluminous. It contains conflicts; but viewed most favorably to the plaintiff, it shows that there was such a contract as is pleaded, performance of the same by her and breach by defendant.

The motion of plaintiff for a new trial should have been granted, hence the judgment is reversed and a new trial ordered.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 6, 1936.