[Civ. No. 7963.   Third Dist.   Mar. 27, 1952.]

FELIX MANCUSO, Respondent, v. EPHRAIM A. KRACKOV, Appellant.

Albert Picard, Raymond N. Baker and Barrett & McConnell for Appellant.

Mancuso & Herron for Respondent.

PEEK, J.—By his action plaintiff sought to recover damages for the breach by defendant of an oral contract to purchase, in bottle form, four carloads of wine. The jury returned a verdict in plaintiff's favor, and judgment was accordingly entered. Defendant's motions for nonsuit, for

judgment notwithstanding the verdict, and for a new trial were denied. He has now appealed, contending (1) that this court must conclude as a matter of law that under the facts the jury could not find that a contract existed because of the indefiniteness of the terms as to prices and quanity, and (2) that even assuming the jury could so find, said contract was in contravention of O.P.A. regulations, and hence was illegal.

At the outset, because of the first contention of appellant, which is essentially an attack upon the sufficiency of the evidence, we repeat the elementary rule that this court must resolve all conflicts in the evidence in favor of the prevailing party and indulge in all reasonable inferences in support of the verdict. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].)

The evidence so summarized shows that Mancuso was a vineyardist residing at Glen Ellen, Sonoma County, California. Krackov operated a winery located in Brooklyn, New York. They had known one another for several years. In the early part of October, 1944, they met at plaintiff's home. Defendant stated he desired to purchase 10 carloads of wine, and plaintiff informed him that he was in no position to furnish that amount but that he felt he could sell at least three or four cars. After some discussion plaintiff agreed to sell, and defendant agreed to buy four cars. Plaintiff further testified that he agreed he would do his best to obtain a fifth car which defendant agreed to purchase. Although the exact cost of the bottling was not agreed upon at that meeting it was estimated that it would be approximately $1.00 per case, and as to the sale of the bottled wine it was agreed that it should be the maximum price allowed by the next O.P.A. schedule which was due to be issued in the next two or three months. Such arrangements are referred to in the trade as "Franchise Bottling." The essential characteristic of such a contract is that the bulk wine is shipped to the buyer-bottler, who in turn bottles the wine at a fee, and then in bottled form the title passes to him.

Thereafter Krackov returned to New York and upon arrival there found a letter from Mancuso requesting an advance, to which letter Krackov replied enclosing his check "for $3500 as an advance to you against three or four cars of wine that you will ship us in bulk as soon as it is properly finished for bottling." The letter went on to state he hoped

the wine would be ready about March and that he was anxious to know what the new O.P.A. ceiling price would be. Several communications followed concerning the progress of the processing of the wine and when it would be ready for shipment, in particular concerning the first shipment. The first car was shipped around the middle of April, 1945. About April 17 to 19, 1945, the parties again met at Mancuso's home. At this meeting directions were given as to when to ship the remaining cars and further discussion was had concerning a fifth car. Also since the new O.P.A. list had been issued the pricing arrangement was computed in detail.

Krackov later went to Los Angeles from where he wrote telling Mancuso to hold up shipment on the balance until further notice. However, no further orders were given by him. After numerous letters, which Krackov did not answer, Mancuso, by his counsel, informed defendant that plaintiff was holding the wine for his account and that in the absence of a reply the wine would be sold for defendant's benefit. Defendant's counsel replied denying the contract and stated that the money paid by Krackov was not in part payment for the first car but was a loan.

While it is essential that the mutual assent of the parties to the terms of a contract must be sufficiently definite to enable the court to ascertain what they are (*Moore* v. *White*, 98 Cal.App.2d 510 [220 P.2d 918]), nevertheless it is not necessary that each term be spelled out in minute detail. It is only that the essentials of the contract must have been agreed upon and be ascertainable. (12 Am.Jur. 554.)  The law does not favor the destruction of contracts on the ground of indefiniteness, and if it be feasible the court will so construe the agreement as to carry into effect the reasonable intention of the parties if that can be ascertained. (*McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546 [213 P. 971].)  Furthermore, it is a well established principle of law that that which can be made certain is certain. (Civ. Code, § 3538; *Tuck* v. *Gudnason*, 11 Cal.App.2d 626 [54 P.2d 88].)

Applying the principles above stated to the facts shown by the record it is readily apparent that there was ample evidence to support the findings of the jury. It was a business arrangement, worked out in as much detail as was then possible; the items to be included in the bottling costs were ascertained at the October meeting of the parties. All that remained was the computation thereof, which would

be made at a later date when the desired data would be available, which it ultimately was. The same was true concerning the sale price which was subject to the publication of the next O.P.A. schedule, which schedule had been issued prior to the meeting of the parties in April, 1945.

The cases relied upon by appellant in support of his argument, that because of the alleged indefiniteness of essential elements the jury could not find the existence of a contract, are distinguishable on their facts, and hence are not controlling in this case.

The second contention of appellant is that the contract is void as violative of O.P.A. M.P.R. 445, section 7.8 (b) as amended March 21, 1945. That amendment provided:

"Specifically, it shall be deemed an evasion of this regulation for a person to sell packaged wine to the bottler thereof at prices in excess of the maximum prices applicable to the sale of an equal quantity of bulk wine. However, until and including August 1, 1945, sales and deliveries of packaged wine to the bottler thereof pursuant to an agreement entered into prior to March 21, 1945, may be made at prices not in excess of the maximum prices applicable to sales of the packaged wine.

"This amendment shall become effective March 23, 1945. Issued this 21st day of March, 1945."

Here the record, as previously noted, amply supports the conclusion of the jury that the contract was entered into in October 1944, several months prior to March 21, 1945, the date specified in the amendment.

The judgment is affirmed.

Van Dyke, J., and Schottky, J. pro tem, concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1952.