Gaylord ENGLE, an Individual, Truxtun B. Shreve, d/b/a Shreve Heating & Cooling Service, Inc., Appellants (Plaintiffs below),

v.

FIRST NATIONAL BANK OF CHUGWATER, Appellee (Defendant below).

FIRST NATIONAL BANK OF CHUGWATER, Appellant (Defendant below),

v.

John ZIEMBA, d/b/a Troy Decorating Company, Appellee (Plaintiff below).

Nos. 4932, 4933.

Supreme Court of Wyoming.

Feb. 14, 1979.

Franklin D. Bayless, Cheyenne, signed the briefs for appellants in Case No. 4932 and appellee in Case No. 4933, and appeared in oral argument on their behalf.

Raymond B. Hunkins, Wheatland, signed the brief for appellee in Case No. 4932 and appellant in Case No. 4933, and appeared in oral argument on its behalf.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.[*]

RAPER, Chief Justice.

This appeal involves the right of plaintiffs-appellants, Gaylord Engle and Truxtun B. Shreve (appellants), to mechanics' liens[1] on a ranch home built by them for their children, Gaylord D. Engle and Barbara A. Engle (Engles).[2] The district court granted summary judgment in favor of defendant-appellee, First National Bank of Chugwater (Bank)[3] denying appellants' lien claim. From that summary judgment, appellants appeal. The district court also granted summary judgment in favor of another plaintiff, John Ziemba (Ziemba), and, from that order, the Bank appeals.

The basic issues, as set out by the appellants, are that the district judge erred:

1. In finding that the oral contracts between appellants and the Engles were too indefinite to be enforced.

2. In not granting summary judgment in favor of the appellants for foreclosure of their liens for labor and materials supplied in the construction of a new home on the Engles' ranch.

---

[*] At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5-1-106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

1. Mechanics' and Builders' Liens, §§ 29-2-101 to 29-2-124, W.S.1977.

2. Gaylord Engle is the father of Gaylord D. Engle, and Truxtun B. Shreve is the father of Barbara A. Engle.

3. The Bank is defendant-appellee vis-a-vis Gaylord Engle and Truxtun B. Shreve and is defendant-appellant vis-a-vis John Ziemba.

3. In not granting summary judgment for appellants on the grounds the Bank would be unjustly enriched to the extent of the value of labor and materials if the appellants' liens were not found to be valid.[4]

The Bank asserts that:

1. The contracts between appellants and the Engles and Ziemba and the Engles are void under the Wyoming Statute of Frauds, § 16–1–101, W.S. 1977.

2. The contracts are so vague and indefinite as to be unenforceable.

3. If the contracts are found to be valid, they should be viewed as continuing contracts and the indebtedness not yet accrued, thus not fulfilling the requirements of § 29–2–109, W.S. 1977.[5]

4. The lien statements filed in this case are fatally defective because they describe the entire ranch on which the improvements are located rather than describing the one acre on which the improvements actually appear, and are thus not in compliance with §§ 29–2–109 and 29–2–102, W.S.1977.

5. No distinction is made between the new home and corral fencing and the land on which they appear, and thus the lien statements are again fatally defective.

We will reverse the summary judgment in favor of the Bank. We will affirm the summary judgment in favor of Ziemba.

In 1973, the Engles purchased a ranch located southeast of Pine Bluffs, Wyoming, near the Colorado-Wyoming border. The purchase was made by means of a loan from the Farmer's Home Administration (FHA) in the amount of $80,000. Included in the loan was $23,000 to be used to begin construction of a new ranch house. The Engles were aware that $23,000 would be insufficient to complete a home but undertook construction with a plan that the house would be completed year by year as funds became available. The appellants were to assist the Engles and provide materials and labor. The terms of the oral contract between appellant Shreve and the Engles were:

1. Appellant Shreve, with the aid of his wife, was to do the heating, wiring, plumbing, septic system, and help to finish the trim on the house, the framing, gutters, and run the main loop for electricity into the house.

2. No definite time for completion was established. When construction commenced in March or April of 1974, the work was to be done as money was available to purchase materials and as the Shreves had time to do the work.

3. Payment was to be made to Shreve for materials provided and for labor at the going rate. The payments were to begin when the work was completed and as funds became available to the Engles from the sale of crops and livestock.

The oral contract between appellant Engle and the Engles provided that Engle would:

1. Do framing and finishing work which included placing the plates, floor joists, putting up all the walls, rafters, roof sheeting, flooring and setting the outside doors. The finish work he would do included setting of the inside doors and all the window and door frames, base trim, kitchen cupboards, cabinets, bathroom, bathroom trim and vanity.

2. Complete work as funds and materials were available and as the home reached the stages where the work he was to do could be done.

3. Be paid at the going rate when the house was completed, as the Engles were able to raise funds from agricultural production. (He began work in June, 1974.)

---

4. Because of our disposition, it will not be necessary to address appellants' Issue No. 3, though unjust enrichment may be peripherally mentioned.

5. Section 29–2–109, W.S.1977 imposes a duty on the lien claimant to file, within a specified time, an account for which a lien is claimed, "after the indebtedness [has] accrued."

4. Materials were to be paid for with funds from the FHA loan.

The oral contract between Ziemba and the Engles was for drywall and painting on the house to be done when the progress of construction permitted. He was to be paid when the building was completed.

In March, 1975, at a time when substantial work had been done on the house, the Engles renewed a previous note and obtained an additional $20,000 advance from the Bank to finish feeding yearling heifers and to pay an obligation at a Torrington bank.[6] Until May 14, 1975, these loans were secured by chattel mortgages on livestock and cattle, but on that date the Bank procured a second mortgage on the Engles' ranch. After the second mortgage was obtained by the Bank, work continued on the home.

Foreclosure proceedings were filed by the Bank on May 21, 1976. A receiver, appointed on June 29, 1976, took control of all crops, feed, and equipment. The order appointing the receiver also restrained the Engles from construction, improving, or altering the Engles' ranch. At the time of that order, the home was not completed.

The appellants and Ziemba filed liens on September 20, 1976. They had not been joined in the foreclosure action by the Bank. At the foreclosure sale, the Bank bid in the property for the sum of $174,-917.22, which included their own judgment plus about $106,000 due FHA. The foreclosure sale was approved by the district court on December 12, 1976. On March 8, 1977, the appellants and Ziemba filed in district court the required petitions to foreclose their liens against the Engles and the Bank. § 29–2–114. The Engles were later dismissed as parties by virtue of discharge in bankruptcy.

The district court, on December 2, 1977, granted summary judgment in favor of the Bank against the appellants. It was premised on the district court's conclusion that no enforceable contract ever existed between appellants and the Engles, because time for payment was too indefinite:

" * * * The depositions of these two plaintiffs indicate that they were to be paid 'when he was able to raise the money from his agricultural productions. It was to be any time in the future that he could * * *.' (Deposition of Gaylord Engle)"

" 'I would carry the balance until they could pay for it * * * that was to be paid at whatever time they got back on their feet and could afford to pay * *.' (Deposition of Truxton [sic] B. Shreve)"

The court found Ziemba's contract to be sufficiently definite because Ziemba stated:

" * * * He told me he was going to pay me when we finished. That's what he told me." (Ziemba's deposition.)

Further, the district court determined that Ziemba's lien was timely filed because a restraining order had the effect of causing the indebtedness to accrue under § 29–2–109 (supra footnote 5).

We first explore the propriety of granting a motion for summary judgment under the circumstances of this case. In doing so, we look at a motion for summary judgment in the same light as the district judge and as though originally before us because we now have the same materials as he did on which to base a decision. *Seay v. Vialpando*, Wyo.1977, 567 P.2d 285; *Shrum v. Zeltwanger*, Wyo. 1977, 559 P.2d 1384. Granting of a summary judgment depends upon the correctness of the court's dual finding that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. *Johnson v. Soulis*, Wyo. 1975, 542 P.2d 867. The facts surrounding the alleged formation of the contracts are not questioned here. The Bank does not contend there were no agreements but asserts they were too indefinite to rise to the status of contracts. The evidence presented by appellants and Ziemba as to the agreements stands uncontradicted. We conclude that there are no material issues of fact insofar as the agreements are concerned.

6. At this point, the Engles were indebted to the Bank for a total of approximately $60,000.

Our task is to determine whether the agreements were unenforceable for indefiniteness, as a matter of law. We hold them enforceable. When terms of the contract are shown without any conflict of evidence, the interpretation of a contract becomes a question of law for the court. *Horvath v. Sheridan-Wyoming Coal Co.,* 1942, 58 Wyo. 211, 131 P.2d 315. It is necessary to establish the existence of a contract in order to fulfill the requirements of the lien statute. *Arch Sellery, Inc. v. Simpson,* Wyo. 1959, 346 P.2d 1068. The statute does not call for a written contract or express contract or formal contract; an implied contract is sufficient upon which to base a mechanic's lien. *Jordan v. Natrona Lumber Co.,* 1938, 52 Wyo. 393, 75 P.2d 378.

The agreements of appellants and Ziemba recite terms of understanding which fulfill the basic requirements of a contract: parties competent to contract; a subject matter; a legal consideration; mutuality of agreement; and mutuality of obligation. 17 C.J.S. Contracts § 1(1), pp. 538–539.

Moreover, in this case we are not dealing simply with unexecuted oral agreement which may or may not be complete in all particulars. We are attending to agreements which have been substantially performed by appellants and Ziemba. We are not asked to decide when payment would reasonably be due in accordance with the agreements. Rather, this is a situation where appellants and Ziemba, having performed their ends of a bargain, are in a position to demand performance by the Engles, who have received the benefit of their performance. The complicating factor is that the Engles are no longer able to perform. Performance is rendered impossible by intervening events. The Engles lost their ranch in the foreclosure and were discharged from their debts in bankruptcy. They are no longer capable nor any longer obligated to pay for the services rendered or materials supplied. Having said this, we point out that we are not considering a case where a loss has been sustained and we must find the party who should properly bear the burden of that loss. Here plaintiffs and Ziemba conferred a benefit which

is measurable in dollars and cents and which has attached to the ranch. They were not paid for their services. The Bank asserts that it has suffered a loss out of the whole transaction. To the extent that may be true, their loss is not related to events pertinent to this case. Its loan to the Engles was to purchase and feed cattle. Originally, its loans were secured by chattel mortgages on cattle and equipment. It is only after the appellants and Ziemba were well along in their work and at a time that the Bank was, or should have been, fully aware that the ranch may have been subject to mechanics' liens when it obtained its second mortgage. If it in fact sustains a loss, it has no one to blame but itself.

Indeed, it is just such situations as this for which the mechanics' liens statutes were designed. The prime justification for such statutes is well stated in 53 Am.Jur.2d Mechanics' Liens § 2, pp. 516–517:

"The basis for a mechanic's lien and the mechanic's lien laws lies in the principles of equity and the dictates of natural justice. Such laws are based on the equity of paying for work done or materials delivered. The principle or doctrine upon which the mechanic's lien and the mechanic's lien laws rest is stated to be the equitable principle of restitution or the prevention of unjust enrichment, and estoppel to deny a benefit. But it appears that it is the detriment to the mechanic or materialman rather than the benefit to the landowner or other party which provides the fundamental basis for the lien, so that a lien may exist even though the value of the owner's property has not been increased.  \* \* \*" (Footnotes omitted.)

They are intended to create a means of securing the claims of a particular class of creditors and to prevent unjust enrichment arising out of the enhancement of value of property from labor and materials which would otherwise go without payment. *United Pacific Insurance Co. v. Martin & Luther General Contractors, Inc.,* Wyo. 1969, 455 P.2d 664, cited in *Permian Corp. v.*

*Armco Steel Corp.,* 10th Cir. 1974, 508 F.2d 68.

■ The Engles promised to pay appellants upon completion of the work and from income produced from the ranch. A contract includes not only what is stated expressly but also that which of necessity is implied from its language, and parties who contract on subject matter concerning which known usages prevail incorporate into the agreement such implications if nothing is said to the contrary. *Arch Sellery, Inc. v. Simpson, supra.* 1 Corbin, Contracts, § 96, pp. 414–415, recognizes that:

> "Parties often make a bilateral agreement for the sale of goods at a specified price or for the rendition of services at specified wages, fixing a time for delivery of the goods or rendition of the services but not fixing a date for making the money payment. In such cases the gap is so readily supplied from general usage or the previous course of dealing that no uncertainty is perceived and both parties are bound. * * * "

In the case before us, it can be readily determined from the oral agreement, testified to by the parties, that the appellants contemplated that they would be paid for materials supplied and services rendered from proceeds of the ranching business; and the Engles contemplated that they would pay from the profits they realized from their ranching business. Such circumstances are not so indefinite as to render the contract unenforceable.[7]

■ Under similar circumstances, other courts have found such contracts to be sufficiently definite so as to be enforceable. For example, *Clay v. Sandal,* Alaska 1962, 369 P.2d 890, 892–893. This court has stated that a promise that was originally too indefinite to be binding may, by performance, become definite; and, as the other party to the bargain must be regarded as continuously assenting to receive such performance in return for his own promise, a valid unilateral contract arises on receipt of such performance. *Casper National Bank v. Curry,* 1937, 51 Wyo. 284, 65 P.2d 1116, 1120–1121. While an executory contract may be unenforceable because of uncertainty, that defense is no longer available where the contract has been performed. *Mason v. Rolando Lumber Co.,* 1952, 111 Cal.App.2d 79, 243 P.2d 814, 815. A debt conditioned on the happening of an event cannot be enforced until the event happens, but where the debt is actually in existence, and payment is merely postponed until the happening of an event which does not happen, payment must be made within a reasonable time and that depends upon the circumstances of each case. *Zitterkopf v. Roussalis,* Wyo. 1976, 546 P.2d 436; *Pegg v. Olson,* 1924, 31 Wyo. 96, 223 P. 223, 224–226; *Black & Yates v. Negros-Philippine Lumber Co.,* 1924, 32 Wyo. 248, 231 P. 398. The principles which govern in circumstances such as those confronted here have been ably summarized in *Mancuso v. Krackov,* 1952, 110 Cal.App.2d 113, 241 P.2d 1052, 1053–1054:

> "While it is essential that the mutual assent of the parties to the terms of a contract must be sufficiently definite to enable the court to ascertain what they are, nevertheless it is not necessary that each term be spelled out in minute detail. It is only that the essentials of the contract must have been agreed upon and be ascertainable. * * * The law does not favor the destruction of contracts on the ground of indefiniteness, and if it be feasible the court will so construe the agreement so as to carry into effect the reasonable intention of the parties if that can be ascertained. Furthermore, it is a well established principle of law that that which can be made certain is certain." (Citations omitted.)

7. We are not dealing with a case of wholly volunteered services. The parties contemplated payment from the beginning. Of course, we can only speculate as to what might have happened had the Engles been able to keep the ranch. We will not do that. Moreover, the case here is easily distinguished from cases where the evidence strongly suggests volunteerism because no agreement was ever contemplated and the family members all live together under the same roof. See *Barry v. Barry,* 1947, 147 Neb. 1067, 26 N.W.2d 1.

The effect of the district court's disposition is to cause forfeiture of the appellants' rights under the contract, as well as under the lien statute. Forfeiture is not favored unless there is some specific provision made for it. See, 2 West's Wyoming Digest, Contracts, ▮▮▮ We hold that the contracts were sufficiently definite to support a mechanic's lien.

There is nothing to the argument that the contract was within the statute of frauds because the statute is satisfied where the contract is no longer executory and has been performed by one party. *Allen v. Allen*, Wyo. 1976, 550 P.2d 1137; *Nussbacher v. Manderfeld*, 1947, 64 Wyo. 55, 186 P.2d 548.

The Bank asserts that because appellants and Ziemba failed to complete the house, the debt did not accrue within the meaning of the statute. The Bank had obtained a restraining order, properly issued by a court of general jurisdiction, which prevented the completion. The statute is not so easily subverted. While we have frequently held that completion causes the debt to accrue within the meaning of the statute, that does not foreclose some other event from fulfilling that same purpose. Generally, a party cannot take advantage of his own act or omission to escape liability. *Reed v. Wadsworth*, Wyo. 1976, 553 P.2d 1024; *Dallas Dome Wyoming Oil Fields Co. v. Brooder*, 1939, 55 Wyo. 109, 97 P.2d 311. Where an improvement is abandoned by the owner or where the completion is otherwise rendered impossible by the owner, the right to a lien is not abrogated. 53 Am.Jur.2d Mechanic's Lien § 50, p. 563. We hold that here, the Bank's action in obtaining a restraining order effectively prevented completion, and the debt accrued at such time as the appellants and Ziemba gained knowledge of the restraining order. No issue is raised that the filing of the liens was not timely. The debt had accrued and the liens were filed timely thereafter.

The Bank urges that the lien statements described the entire ranch and not just the acre the home was located upon, and, for this reason, are fatally defective. The Bank does not allege they were deceived or in any way prejudiced by the description of the whole ranch. Moreover, the appellants and Ziemba moved to remedy this situation during the course of proceedings. The contention is without merit. It has often been held that the inclusion in the description of more land than that to which a lien may attach does not vitiate the lien upon so much of the land as the lien may attach. Anno., "Sufficiency of notice, claim, or statement of mechanic's lien with respect to description or location of real property," 52 A.L.R.2d 12, 83. Appellants, in oral argument, waived any claim of lien with respect to the corral.

The summary judgment in favor of the Bank and against appellants is reversed and remanded to the district court with directions to enter a partial summary judgment as to the lien claim in favor of appellants and determine the exact amount of the lien to which they are entitled. The summary judgment in favor of Ziemba is affirmed.