[S. F. No. 5071.   Department Two.—November 27, 1909.]

LESTER WOODARD, Respondent, v. DWIGHT W. GROVER et al., Appellants.

CONTRACT—SUBSTITUTION OF CONTRACTING PARTY.—Where one party to a contract executes it in duplicate, under an understanding with the other real party in interest that his wife might be named in the instrument as the other contracting party, such arrangement does not permit of the execution of the contract by any other person substituted by such other party in interest. A contract executed by such a substituted party is not binding on the other.

ID.—EVIDENCE—WANT OF RATIFICATION.—The evidence reviewed, and held sufficient to sustain the finding that the plaintiff had not ratified the contract in question, in which a person other than the one agreed upon had been substituted as the other contracting party.

APPEAL from an order of the Superior Court of San Mateo County refusing a new trial. George H. Buck, Judge.

The facts are stated in the opinion of the court.

Hugh R. Osborn, and Jos. H. Skirm, for Appellants

William M. Aydelotte, for Respondent.

MELVIN, J.—This is an appeal from an order denying the motion of defendants for a new trial. Plaintiff sued to enjoin defendants from trespassing upon certain property in San Mateo County, and particularly to restrain them from cutting and removing timber. Defendants answered, admitting plaintiff's ownership of the land in question, but claiming, under a purported contract, set forth by copy in their answer, the right to cut and remove the timber. Plaintiff by affidavit under section 448 of the Code of Civil Procedure denied the due execution and delivery of the written instrument, and challenged its genuineness, stating that although he had on April 17, 1905, signed in duplicate and acknowledged such a writing in which M. A. Grover and M. A. Littlefield were described as parties of the second part, one copy of the instrument had been mutilated by substituting the name of E. S. Grover for that of M. A. Grover. He further deposed

that he had never agreed to such substitution; that through his agent he had so notified D. W. Grover and C. L. Littlefield; that the alleged contract had never been executed in duplicate and deposited in a certain bank in accordance with its provisions; and that on or about November 14, 1905, he had notified the said D. W. Grover and C. L. Littlefield that all negotiations with reference to the contract were at an end.

The case was tried and among the findings in the plaintiff's favor was one that the alleged agreement set out in the answer between plaintiff and M. A. Littlefield and E. S. Grover was never executed nor delivered. It is not necessary to review the alleged contract, which is quite lengthy, as we agree with the finding that it was not duly executed nor delivered. Suffice it to say that it was drawn with the design of permitting the parties of the second part, under certain restrictions as to time and obligations with reference to building a sawmill and constructing a dam, to enter upon Woodard's property for the purpose of cutting a large amount of timber.

In the latter part of 1904, Dwight W. Grover and C. L. Littlefield met plaintiff in Santa Cruz, and after some preliminary conversation Woodard submitted to them a proposition in writing, setting forth the terms upon which he would contract to sell them the timber on the land in question. Several drafts of the proposed contract were drawn, and according to Woodard's testimony it was agreed that, owing to certain litigation in which Grover and Littlefield were engaged, the contract should be executed by their wives. Their testimony differed from his in one radical respect. They stated that Woodard expressed a willingness for them to insert in the contract the names of any persons whose power of attorney they might obtain. Acting upon this theory, they caused the name of Mr. Grover's daughter, E. S. Grover, to be substituted for that of her mother who had refused to sign the agreement. Defendants Hammer and Armstrong are parties to the action by reason of their purchase of an interest in this alleged contract.

Appellants make but two points in their brief: 1. That the change in name is not a "material" alteration in the agreement; 2. That such modification was ratified by plaintiff.

We cannot agree with appellants on the first point, unless we determine that their version of the conversation between

plaintiff and Messrs. Grover and Littlefield is the correct one. The court below resolved the conflict of evidence in favor of Woodard who testified emphatically that he consented only to the *wives* of the real parties in interest signing the instrument which he executed in duplicate. It is idle to say that, because he knew them to be the real parties in interest, Woodard could not complain if Grover and Littlefield substituted any person for the wife of either of them. Our law with reference to community property alone might furnish a reason why one contracting would wish the wife of a real party in interest to sign an agreement rather than any one else. At any rate, there must be something other than the mere fact that real parties are to be represented by others, to justify the sort of mutilation of a contract which was here practiced.

With reference to the other point it may be said that, although from the voluminous correspondence introduced in evidence some expressions wrenched from their context might be taken as admissions of the existence of a contract, the sum of all of the negotiations seems to have been such as to justify the court's conclusion. Plaintiff seems to have been ready to enter into a contract with Grover and Littlefield if they could get proper financial backing and suitable offers for the timber to be taken from his land. Appellants lay great stress upon certain expressions contained in letters, particularly in one written to the Ocean Shore Railroad Company, dated at Madison, Wisconsin, August 31, 1905. In this the following language is used: "I am in receipt of a letter from Messrs. Grover and Littlefield of Pescadero, Cal., in which they say they have a prospect of closing a large contract with you for R. R. ties. In case they close the deal with you I shall furnish the timber. I am expecting to come to Cal. the first of the coming Dec. If for any reason the contract might depend on my personal presence, I would be willing to come at any time. . . . Would be pleased to learn as to the prospects of Mess. G. & L. securing this contract I have mentioned. Also if consistent would like to know the price these people are to furnish the ties for." The mere statement that Woodard would furnish the timber would as well comport with the negotiations pending as with a completed, admittedly binding contract; while the reference to the possible necessity for his personal presence would indicate that he at least did not con-

sider the negotiations between himself and Grover and Littlefield finally settled. So with the expression in one of Woodard's letters to his agent Hovey: "If they are ready with the money to put in the plant, I am ready to furnish the timber as per the contract." This language was used in a communication with which plaintiff returned the unexecuted duplicate agreement that had been sent east, and the letter also contained the following: "When you are satisfied that the condition of things will warrant it, you can deposit the contracts with the First National Bank, as they provide, but I want to be sure that something is going to be done before making myself any more trouble. . . . P. S. If matters are satisfactory, see that the . contracts are *properly executed.*" Appellants Grover and Littlefield, on the other hand, wrote letters from which the court might well conclude that they did not consider their contract to be so settled that they could proceed under it. For example, under date of October 30, 1905, Mr. Littlefield, writing for himself and his associate, expressed the hope that plaintiff would "allow" them "to go to work" while the weather was fine. But whatever may have been their interpretation of the instrument set forth in their pleading, certain it is that the court was justified in concluding that there was no such unqualified ratification by plaintiff of the mutilated instrument as gave it validity and made it his contract.

The order from which this appeal is taken is affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.