[Civ. No. 6772. Third Dist. May 12, 1943.]

B. F. HOUK et al., Respondents, v. WILLIAMS BROS., LTD. (a Corporation), Appellant.

Wm. B. Chaplin for Appellant.

F. M. Brack for Respondents.

THOMPSON, J.—Judgment for $678.57 was rendered in favor of the plaintiffs for their share of the purchase price of an asparagus crop to be produced in the year 1939, pursuant to the terms of a tripartite written contract therefor. From that judgment the defendant, Williams Bros., Ltd., has appealed.

It is contended the contract is void because the partnership name, under which plaintiffs were doing business, was substituted for the names of the second parties, C. Lee Jones and S. C. Legare, which appeared therein at the time the defendant signed the document. It is also asserted the finding that plaintiffs were the owners of the land in question is not supported by the evidence.

The plaintiffs, B. F. Houk and R. P. Houk, were conducting a farming business under the name of Houk Bros. November 19, 1934, C. Lee Jones and S. C. Legare owned the 100 acre ranch in Stanislaus County, which is involved in this suit. On that date they executed a twelve-year lease of that land to Thomas Gill for the purpose of raising asparagus, by the terms of which lease Mr. Gill agreed to pay them $2,000 per annum for the period of two years, after which the lessors were to receive in lieu of the cash rental thirty per cent of the asparagus produced. Prior to January 26, 1939, the plaintiffs acquired said property. The defendant corporation was engaged in buying and marketing farm produce. On the last-mentioned date Williams Bros., Ltd., as party of the third part, entered into a written agreement with Thomas Gill, as first party and the copartnership, Houk Bros., as second party, to purchase the crop of asparagus growing on said

ranch in the year 1939, for the sum of $2,000, thirty per cent of which sum was to be paid to Houk Bros., on specified dates, and the balance to Thomas Gill. That contract contained the following paragraph:

"It is understood and agreed, that the third party [Williams Bros., Ltd.] is buying said crop standing in the field at the date hereof, title thereto now passing to and shall hereafter be vested in said third party, the harvest thereof to be at the cost and expense of said third party. Provided, however, that the first party [Thomas Gill] hereby promises and agrees to continue with and perform all necessary and normal operations of asparagus growers as to the care of the ground and the crop from the date hereof to the end of the harvest period, at his own cost and expense. If said party fails so to do, the third party may have any such necessary work done and charge the cost thereof against the account of the first party."

The contract was negotiated between Thomas Gill and M. P. Williams, one of the members of the corporation. It was drawn in triplicate by the defendant's attorney, after which each copy was immediately signed by Mr. Williams in behalf of the corporation on January 26, 1939, and delivered to Thomas Gill to sign and to procure the signature of the said second parties. At the time these instruments were signed by Mr. Williams, it was erroneously recited that the former owners of the land, C. Lee Jones and S. C. Legare, were the parties of the second part. Probably this inadvertent statement occurred on account of the belief on the part of the members of the corporation or its attorney that the designated second parties owned the property since they executed the lease to Thomas Gill in 1934, and because they had no knowledge of the subsequent acquisition of the property by the plaintiffs. Mr. Gill, however, recognized Houk Bros. as the owners of the real property and the lease. Mr. Gill did not at first discover the error in the written instruments. He took the contracts to his attorney at Tracy for inspection, and subsequently signed each copy that same day. Two days later he presented them to B. F. Houk for acceptance and signature. Mr. Houk noticed the mistake in the names of the second parties in the contracts and told Gill they would have to be changed. He took the instruments to a notary public who at his request erased the names of Jones and Legare from

the first paragraph and substituted that of Houk Bros. as party of the second part. Each copy of the agreement was then signed by B. F. Houk in behalf of the partnership, and he then handed one of them to Thomas Gill for delivery to the defendant. That signed document, with the names of the second parties changed to Houk Bros., was delivered by Mr. Gill at the office of the defendant in Sunnyvale, where it remained for several days, without criticism of said alteration of the contract. On February 10th, Mr. Gill again called at the defendant's office in Sunnyvale where he met M. P. Williams, who discussed with him the reason for changing the names of the second party to that of Houk Bros. Williams was then fully informed of the necessity of making that change. Mr. Williams, in the presence of Thomas Gill, called his attorney on the telephone and inquired regarding the legal effect of that change, on the validity of the contract. After fully discussing that matter Williams, in behalf of the corporation, acquiesced in the change and adopted the contract as so altered, saying, "Well, . . . everything looked all right." Thereafter, on February 28th, the defendant sent to the ranch materials for the construction of 2,000 crates in which to pack and ship its asparagus. After the discussion with M. B. Williams regarding the change of names, no intimation of the defendant's dissatisfaction with the contract was expressed for sometime. The conduct of the representatives of defendant led plaintiff and Thomas Gill to believe the corporation intended to fulfill the contract and harvest its crop. March 2nd, Mr. Gill again met M. B. Williams and told him he was going to assign his interest in the contract to a local bank to raise funds for necessary use. Williams persuaded him not to assign the contract to a bank, by promising Gill the corporation would advance to him, under their contract, the money he required. The sum of $150 was then actually advanced to Gill, but it appears that payment was credited on another transaction between them. About March 6th, M. P. and Lee Williams came to the ranch, and for the first time told Mr. Gill that "the ground was too dry and wasn't fit to grow asparagus." They then told him they were not satisfied with the purchase of the asparagus crop. The change of name in the contract was not then mentioned. March 9th, the corporation wrote a letter to Mr. Gill, notifying him of its repudiation of the contract on the grounds

that he had failed to cultivate the asparagus according to the terms of the instrument, and because the document had been altered by changing the names of the second parties after the corporation had executed the contracts. The letter asserted that the contract was therefore void. The defendant failed and refused to harvest or pay for the crop. After ineffectual correspondence, the plaintiffs brought this suit against the defendant on November 22, 1940, to recover their share of the purchase price of the asparagus crop of 1939, pursuant to the terms of the written contract as altered and accepted by the respective parties. Thomas Gill was not a party to this action.

The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiffs in every respect. The court determined that plaintiffs were the owners of the land; that the contract was duly executed and accepted and adopted by the defendant corporation after the alteration of the instrument occurred, with full knowledge thereof; that the contract was therefore valid and binding, and that the defendant was indebted to plaintiffs in the sum of $678.57, no part of which had been paid. Judgment was accordingly rendered for that sum in favor of plaintiffs. From that judgment this appeal was perfected.

There is adequate evidence to support the findings that the plaintiffs were the owners of the ranch at the time of this action. B. F. Houk testified to that effect, without objection. The affidavit of F. M. Brack, filed in behalf of plaintiffs on a motion for new trial, avers that from and after December 18, 1936, the plaintiffs "were the owners of and entitled to all rents, issues and profits of all the land." The letter, dated April 11, 1941, from Stanislaus County Title Co. to William B. Chaplin, attorney for the defendant, merely indicates that other relatives of the plaintiffs had undivided interests in the land. That letter, at most, creates a conflict of evidence on that issue. The other relatives are making no claim of interest to any part of the purchase price of the crop. They were not parties to the contract. The finding that the plaintiffs are the owners of the property is sufficiently supported by the evidence.

It is true that a *material alteration* of a contract without the consent of a party who has already signed and delivered it, renders the instrument voidable as to such non-consenting party. (Sec. 1580, Civ. Code; *Walsh* v. *Hunt*, 120

Cal. 46 [52 P. 115, 39 L.R.A. 697]; *Woodard* v. *Grover,* 156 Cal. 581 [105 P. 736]; 6 Cal.Jur. 230, sec. 152; 6 Williston on Contracts, Rev. ed., 5312, sec. 1891, et seq.) A contract which is voidable for lack of consent may, however, be ratified by subsequent consent. (Sec. 1588, Civ. Code; *Dool* v. *First National Bank of Calexico,* 107 Cal.App. 585, 589 [290 P. 478]; 6 Cal.Jur. 93, sec. 57; 6 Williston on Contracts, Rev. ed., 5319, secs. 1896 and 1897.) In the text last cited it is said:

"Ratification, subsequent to the alteration, has as full effect as authority originally granted, and ratification may be shown by any conduct from which assent can fairly be implied. Silence may be enough. It has been well said, 'The rule is just and supported by the authorities that, where a document has been altered and notice of such alteration is brought to the attention of the parties affected, it is their duty to disavow it at once, or within a reasonable time after learning thereof, or they are bound by the document as altered.' "

The foregoing rule is applicable to either sealed or unsealed instruments, in jurisdictions where that distinction has been abolished by statute. In California the distinction between sealed and unsealed instruments has been abolished. (Sec. 1629, Civ. Code.) Ordinarily, not only are the signatures of the parties to a sealed instrument necessary, but there must also be a delivery of the document to give it validity. A redelivery of a sealed instrument by the obligor after it has been altered will make it binding in its altered form. But redelivery after the alteration is implied when the obligor subsequently ratifies the instrument. Section 1897 of 6 Williston on Contracts, *supra,* says in that regard: "There is always a delivery when the maker of a deed indicates his assent to be bound by it as a completed instrument." It is further said in that section that there is "no difficulty in finding delivery when the maker after an alteration has been made ratifies it."

In the present case the alteration was made to recite the fact, as the court found, that Houk Bros. was the real owner of the ranch and entitled to an interest in the purchase price of the asparagus crop. It was evidently to the advantage of the defendant to execute its contract of purchase with the real parties who were interested in the crop. No fraud was alleged or proved or relied upon with respect to that substitu-

tion of parties to the contract, or otherwise. Assuming, without so deciding, that the substitution of names constituted a *material alteration* the contract as so changed was subsequently adopted and ratified with full knowledge of that change on the part of the defendant. The appellant is therefore bound by the instrument as it was altered. Not only did the defendant, through M. B. Williams, its duly authorized representative, after discussion of the legal effect of the change with its attorney, say to Thomas Gill, "everything looked all right," but for several weeks thereafter no criticism of that change was made. On the contrary, the defendant sent to the ranch some three weeks thereafter materials for constructing 2,000 crates in which to pack and ship its asparagus, and persuaded Gill not to assign his interest in the contract to a bank, promising him it would advance $300 on the contract. These declarations and conduct constituted adequate evidence of assent and ratification of the contract as altered, and estopped the defendant from subsequently denying the validity of the contract on that account.

The case of *Walsh* v. *Hunt, supra,* upon which the appellant relies, was a suit to foreclose a note secured by mortgage. In that case the defendant, Emma E. Hunt, after signing the note and mortgage containing figures in lead pencil, representing the principal amount of the indebtedness and the rate of interest to be charged, delivered it to Hughes, a real estate agent, to procure the due execution of the instruments by the plaintiff, Walsh, without authorizing an alteration of those lead pencil figures. Both the principal sum and the rate of interest were subsequently changed by erasing the lead pencil figures and inserting others to the detriment of the payer. For the period of a year thereafter, Emma E. Hunt was unaware of those alterations. She never accepted or ratified those alterations. In spite of the foregoing facts, the court rendered judgment for the plaintiff in accordance with the unauthorized alterations of the note and mortgage. The Supreme Court properly reversed the judgment on the theory that the alterations were material and that they were neither authorized nor ratified. That case is not in point.

The case of *Woodard* v. *Grover, supra,* upon which the appellant also relies, was suit for tresspass on timber land in San Mateo County. The defendants answered, attempting to justify the cutting and removal of timber under the terms of a "purported contract." That proposed contract was signed

in duplicate by the plaintiff, in which M. A. Grover and M. A. Littlefield were designated as parties of the second part, and delivered to an agent to procure their signatures. Without authority, the agent subsequently substituted for the name of M. A. Grover that of E. S. Grover, her daughter. It appears that M. A. Grover, the wife of Dwight W. Grover, refused to sign the contract, and, without authority, the name of the daughter, E. S. Grover, was substituted. She signed the contract. That change of parties was not assented to nor ratified. The Supreme Court said: "The court was justified in concluding that there was no such unqualified ratification by plaintiff of the mutilated instrument as gave it validity to make it his contract." The judgment was affirmed.

That case is not in point. It is readily distinguishable from the present case, in which it satisfactorily appears that with full knowledge of the alteration complained of the defendant accepted and ratified the contract as altered, by both declarations and conduct.

In the present case there is ample evidence to support the conclusion that M. P. Williams, who was an officer of the corporation, had authority to accept and ratify the alteration of the contract. He negotiated the contract to purchase the crop in the first instance, and he signed the contract in behalf of the corporation.

Moreover, there is a serious question as to whether the defendant may not be deemed to have admitted the genuineness and due execution of the contract, under section 447 of the Code of Civil Procedure, by its failure specially to plead in the answer a lack of genuineness and due execution. That section provides:

"When an action is brought upon a written instrument, and the complaint contains a copy of such instrument, or a copy is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the answer *denying the same* be verified."

Paragraph IV of the second amended complaint alleged merely that "plaintiffs and defendants entered into a written contract of sale, a copy of which contract is attached hereto, marked Exhibit 'A', and made a part hereof." The answer failed to deny specially that the contract, which appears on its face to be genuine and duly executed, was defective for either of those reasons, or at all. The answer merely denied

generally "each and every allegation" of paragraph IV of the complaint. While it is true that a liberal construction of pleadings with the object of securing substantial justice should prevail (21 Cal.Jur. 53, sec. 30), it has been held that new matter constituting a special defense must be specially pleaded in the answer. (21 Cal.Jur. 136, sec 91.) Sections 447 and 448 of the Code of Civil Procedure appear to have been enacted on the theory that the "genuineness and due execution" of a written instrument which is the basis of a suit become special defenses when the instrument is included in the pleading, or is attached thereto as an exhibit. Compliance with the provisions of those sections is required, under such circumstances, to raise the issue of a lack of genuineness or due execution of the instrument. (*Sloan* v. *Diggins,* 49 Cal. 38; *Williams* v. *Nieto,* 98 Cal.App. 615, 618 [277 P. 513]; 21 Cal.Jur. 136, sec. 91; 29 Cal.L.Rev. 254.) In the Williams case, *supra,* which was a suit upon a note and mortgage signed by mark, and witnessed only by one person's signature, contrary to section 17 of the Code of Civil Procedure, the court held that the due execution of the instruments was deemed to have been admitted by the defendant by his failure to deny specially the due execution in his answer. The court said in that regard:

"This contention [of a lack of due execution] is based upon the fact that Suzy Nieto's signature to both the note and mortgage is by mark and there is only one witness to her mark. (Sec. 17, Code Civ. Proc.) The complaint is verified and contains a copy of the note and mortgage. The answer is also verified, *but does not deny the execution of either the note or mortgage.* Therefore, *the genuineness and due execution of both the note and mortgage are admitted.*"

However, it is not necessary for us to determine that the lack of genuineness and due execution must be specially pleaded under the circumstances of this case, and we refrain from doing so, because there is ample evidence to show that the defendant approved and accepted the contract as genuine and binding, after the names of the second parties were changed.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.