[Civ. No. 22197. Second Dist., Div. Two. Apr. 26, 1957.]

CONSOLIDATED LOAN COMPANY (a Corporation), Respondent, v. LOUIS HARMAN, Appellant.

Franklin D. Laven for Appellant.

Phillips & Gooing, William R. Phillips and Homer H. Gooing for Respondent.

ASHBURN, J.—Appeal from judgment rendered against defendant Louis Harman upon a continuing guaranty signed by him.

Defendant's wife (under the name of Charlotte Silver) was a partner with Fred Gusinow in conducting business under the name of Frosty Foods. The partnership needed more money, had been refused further credit at the Santa Monica branch of Bank of America, was about to try the Bishop branch but did not expect to succeed. Gusinow explained the situation to defendant, who agreed to give a continuing guaranty of any indebtedness of Frosty Foods not exceeding $50,000 at any one time. Gusinow told him that he "would need another guarantee made out to the Bank of America or any other lending institution to take it to in the event the bank in Bishop did not accept it, which I felt certain they would not." A printed form of the bank was used. It was addressed to and ran in favor of Bank of America National Trust and Savings Association "or any other accredited lending institution," the quoted words being typed into the form. Plaintiff was licensed by the state as a money lender under the Personal Property Brokers License Act and was engaged in buying conditional sales contracts from dealers. The court found that plaintiff was a "duly accredited lending institution."

After delivery of the document to plaintiff and before any money was advanced by it, plaintiff's manager, Mr. Owens, struck out the words "Bank of America National Trust and Savings Association or any other accredited lending institution" and substituted "Consolidated Loan Co." Defendant had previously been told that the bank had declined a loan and that plaintiff had accepted the guaranty and would handle the financing; defendant said this was all right. He was also told that Consolidated would put its own name on the guaranty, and he made no objection thereto. This having been done, conditional sales contracts were purchased from Frosty Foods by plaintiff. Frosty Foods soon went into bankruptcy, owing plaintiff $6,014.16, for which amount judgment was rendered in favor of plaintiff against Harman. Defendant

knew of the fact of plaintiff's advancing moneys from time to time on the strength of the guaranty.

■ An alteration of a written instrument made after delivery and without previous consent vitiates the obligation, at the option of the other party, if the alteration pertains to a material matter,—if it enlarges or diminishes the obligation, but not where it merely identifies the intended obligee. (2 Am.Jur., § 60, p. 642; 3 C.J.S., § 30b, p. 940.) ■ The original guaranty in this case ran in favor of an alternative class,—"any other accredited lending institution," and plaintiff, being within that class, was named as an anticipated obligee. When the instrument was so changed as to eliminate all other potential obligees and to confine the obligation to the one institution which advanced money, the alteration did not rise to the dignity of a material one.

Section 1700, Civil Code, provides that a "material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act." Section 1982, Code of Civil Procedure: "The party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, must account for the appearance or alteration. He may show that the alteration was made by another, without his concurrence, or was made with the consent of the parties affected by it, or otherwise properly or innocently made, or that the alteration did not change the meaning or language of the instrument. If he do that, he may give the writing in evidence, but not otherwise."

■ The test of materiality of the alteration is whether it changes the rights or duties of the parties, or either of them. "The old rule was that any change in a written contract made by a party thereto without the knowledge or consent of an obligor thereon discharged such obligor from liability thereunder. This rule has been much relaxed, and the rule in most jurisdictions now is that the change must be a material change. ■ The materiality of the change, however, does not depend upon whether or not the party not consenting thereto will be benefited or injured by the change, but rather upon whether or not the change works any alteration in the meaning or legal effect of the contract. (*Turner* v. *Billagram*, 2 Cal. 520; *Humphreys* v. *Crane*, 5 Cal. 173.) A material alteration is one that works some change in the

rights, interests, or obligations of the parties to the writing."
(*Lasky* v. *Bew*, 22 Cal.App. 393, 395-396 [134 P. 358].) " 'A
material change or alteration of an instrument is one which
causes it to speak a language different in legal effect from that
which it originally spoke' . . . ▓ Any change made in a
document after its execution, which merely expresses what
would otherwise be supplied by intendment is immaterial, and
the document is in effect unaltered by it." (*Cavitt* v. *Raje*,
29 Cal.App. 659, 660-661 [156 P. 519].) To the same effect
are, *Coleman* v. *Dawson*, 110 Cal.App. 201, 208 [294 P. 13];
*Houk* v. *Williams Bros., Ltd.*, 58 Cal.App.2d 573, 578 [137
P.2d 737]; 3 Cal.Jur.2d, § 2, p. 198, § 10, p. 203; 3 C.J.S., § 4,
p. 905, § 79, p. 925.

Appellant's reliance upon *Woodard* v. *Grover*, 156 Cal. 581
[105 P. 736], is misplaced. In that instance the name of E. S.
Grover had been substituted for that of M. A. Grover as one
of the parties of the second part to a contract; this was done
after delivery and without the consent of the other party. It
was held to be a material alteration which destroyed the obli-
gation of the parties of the second part. That is far different
from the situation at bar. The guaranty when delivered ran
in favor of "Bank of America National Trust and Savings
Association or any other accredited lending institution." This
was an offer to guarantee indebtedness incurred in favor of
any lender who came within the general description of "ac-
credited lending institution." When one such company
accepted the guaranty and advanced money on it the described
class then narrowed to that one lender. When that company
substituted its own name in place of the general language de-
scribing a class, it did not make the writing speak in any
different way. Had it remained in its original form the lender
could have recovered upon it after advancing the money.
Following the change it had the same right, a recovery of no
more and no less money than it would have taken had the
change not been made.

▓ Appellant argues that plaintiff is not an "accredited
lending institution" because it is not licensed under the Bank
Act. The record affords no basis for that conclusion. Plaintiff
is licensed as a money lender under the Personal Property
Brokers License Act (now Fin. Code Ann., div. 9, ch. 2,
§ 22200 et seq.). Such a license issues only after investigation
by the commissioner as to financial responsibility, experience,
character and general fitness of the applicant. (Fin. Code Ann.,

§ 22206.)[1] "Accredited" is not a technical term, nor was it so used in this instance. According to Webster's New International Dictionary, Second Edition, it means: "1. Publicly or officially sanctioned or authorized; provided with credentials; also, accepted as valid or credible. . . . 2. Officially vouched for or guaranteed as conforming to a prescribed or desirable standard; as, an accredited school or college. . . ."

Primarily, the business of Frosty Foods was selling home freezers to consumers on conditional sales contracts, which were then transferred by it to the lending institution with recourse against Frosty Foods in case of default by the vendee. That is a business more appropriate to a personal property broker than a bank. (See Fin. Code Ann. §§ 22009 and 22050.) The court's holding with plaintiff in this regard was well grounded.

Defendant being apprised of the change in the written guaranty and of the advancing of moneys by plaintiff on the strength of same, made no objection whatever; he enjoyed the full benefit of plaintiff's reliance upon the altered instrument in that his wife's firm received and used plaintiff's advances until Frosty Foods went into bankruptcy.

*Houk* v. *Williams Bros., Ltd., supra,* 58 Cal.App.2d 573, declares that a material alteration of a contract without consent of the other party "renders the instrument voidable as to such non-consenting party"; also that the contract thus made voidable may be ratified by subsequent consent. Quoting from 6 Williston on Contracts, rev. ed., 5319, §§ 1896 and 1897, it is said: " 'Ratification, subsequent to the alteration, has as full effect as authority originally granted, and ratification may be shown by any conduct from which assent can fairly be implied. Silence may be enough. It has been well said, "The rule is just and supported by the authorities that, where a document has been altered and notice of such alteration is brought to the attention of the parties affected, it is their duty to disavow it at once, or within a reasonable time after learn-

---

[1]Fin. Code Ann. § 22206. "Upon the filing of the application and the payment of the fees and the approval of the bond, the commissioner shall investigate the facts, and if he finds that the financial responsibility, experience, character, and general fitness of the applicant, and its members if the applicant is a copartnership or association, and its officers and directors if the applicant is a corporation, are such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly, and efficiently within the purposes of this division, he shall issue and deliver a license to the applicant to engage in business in accordance with the provisions of this division, at the location specified in the application."

494

ing thereof, or they are bound by the document as altered." ' "
(P. 579.) We have that precise type of consent and ratification here.

 Appellant argues that a guaranty is a contract required to be in writing (Code Civ. Proc., § 1973, subd. 2), and hence authority of an agent to make a material alteration therein must be in writing (Civ. Code, § 2309). The argument is misplaced. The alteration under discussion was made by plaintiff. The agent to whom counsel refers merely conveyed information to and from defendant. The statute of frauds and section 2309, Civil Code, are not involved in this case.

Appellant's arguments are largely directed to sufficiency of the evidence to support the findings concerning his knowledge and consent to the alteration. Pursuant to the rule governing courts of review we have proceeded on the basis of the evidence and inferences favorable to respondent. The duty rests upon an appellant who asserts insufficiency of the evidence to demonstrate that fact (*New* v. *New*, 148 Cal. App.2d 372, 383 [306 P.2d 987]). This the appellant has failed to do.

The attempted appeal from order denying a new trial is dismissed.

Judgment affirmed.

Moore, P. J., and Fox, J., concurred.