Peter OVERBOE and David Overboe,
Plaintiffs and Appellants,

v.

Edwin OVERBOE, Defendant and
Respondent.

Civ. No. 8443.

Supreme Court of North Dakota.

Aug. 9, 1968.

Whittlesey, Pancratz & Wold, Fargo, for appellants.

Johnson, Milloy & Eckert, Wahpeton, for respondent.

STRUTZ, Judge, on reassignment.

The plaintiffs brought this action for specific performance of an option to sell real estate. It appears from the record that the plaintiff Peter Overboe owned a quarter-section of land on which he resided with his family. The plaintiff David is his son. The defendant, Edwin Overboe, is a brother of Peter Overboe.

For some years, Peter had financial reverses and he was quite heavily indebted to a number of persons, including his brother, Edwin Overboe. On February 14, 1961, Peter and Edwin entered into an agreement under the terms of which Edwin was to pay all of Peter's debts, including those which Peter owed to him. These debts, with advances made by the defendant, totaled slightly more than $24,000. It was agreed between the parties that the quarter-section of land was worth $150 per acre, or a total of $24,000. At the time of this agreement, and simultaneous to the delivery of the deed to the land by Peter and his wife to Edwin, the parties signed the following agreement:

## "AGREEMENT

"It is mutually agreed by and between Peter Overboe, Agnes Overboe, his wife, and Edwin Overboe that Peter Overboe, or any member of his immediate family, shall have the option to purchse the SE ¼ Section 2–136–51 (the same premises to which a deed was executed this day) at the price of $24,000.00 plus the cost of any improvements made or sustained by Edwin Overboe. This option shall expire Ten years from this date, or within one year after the date of Edwin Overboe's death, whichever date is the earliest.

"Dated this 14th day of February 1961.

[Signed] "Peter Overboe
[Signed] "Agnes Overboe
[Signed] "Edwin Overboe

"Witnesses

[Signed] "Ralph L. Trom
[Signed] "John G. Ottis"

After the agreement had been completed and title to the land had been delivered to Edwin, Peter discontinued farming operations but he continued to live on the land until this action for specific performance was brought against Edwin.

Early in 1966, David, with his father, Peter, decided to exercise the option to repurchase. They wrote to Edwin, and they received a reply stating that the option could be exercised and David could have the land—

" * * * for $150 per acre plus a reasonable sum ($10,000) for the improvements made to the farm. All in cash."

Thereafter, the plaintiffs had their attorney serve upon Edwin a written notice of intent to exercise the option. In it, they declared their intention to exercise the option and stated that they were ready, able, and willing to perform the terms of the option, and they requested that "within fourteen of the date of this instrument" the defendant present a warranty deed to the premises and furnish an abstract of title, together with proof as to the cost of any improvements which he claimed to have made. In reply to this demand, the defendant, Edwin, advised the plaintiffs that he was ready to turn back the land at $150 per acre together with reimbursement for improvements, the value of which he fixed at $10,000.

After some further correspondence, all of which proved fruitless, the plaintiffs served a summons and complaint upon Edwin, demanding specific performance of the option agreement and praying that the defendant be required to convey merchantable title to the plaintiffs and that the court determine the specific amount of cost of improvements due the defendant under the option. The defendant denied that the option had ever been exercised; and he alleged that the plaintiffs failed to comply with its terms, that the plaintiffs' acceptance of the option was qualified and conditional, that the defendant had made improvements which were of the reasonable value of $10,000, that the plaintiffs had not tendered the amount due under the option, and that the option was unenforceable because there was no consideration for its execution.

The trial court found for the defendant on the ground that the option was indefinite in its terms and that therefore it could not be enforced. From a judgment for the defendant entered by the trial court, the plaintiffs have taken this appeal, demanding trial de novo.

It will be conceded that the option agreement, which was drawn by a layman and not by an attorney, is not a model instrument. However, the agreement is definite as to the land to be conveyed, for it is clearly described. The period within which the option must be exercised is definite, for it provides that it be exercised within ten years of its date—which was February 14, 1961—or within one year after the death of Edwin, whichever shall occur first.

■ The defendant contends that there was no consideration for the option, but this contention clearly is without merit. Here, the plaintiff Peter Overboe had delivered to the defendant a deed to his land in exchange for the payment of the plaintiff's debts by the defendant, which debts were listed in writing. Thus there were mutual promises for the agreement: a delivery of title to land by the plaintiff and a payment by the defendant of listed debts.

■ The option agreement was a part of these mutual promises, for it was drawn at the bottom of the last sheet on which the debts of the plaintiff Peter Overboe were listed. Where mutual promises are made, each furnishes a sufficient consideration to support an action on the other. 17 C.J.S. Contracts, § 97, p. 781.

■ We next must determine whether the option agreement is indefinite and uncertain, as found by the trial court, because it fails to set forth any guidelines or definition as to the improvements for which the plaintiffs must pay the cost in the event of exercise of the option. When the plaintiffs notified the defendant that it was their intention to exercise the option, the defendant demanded $10,000, in addition to the $24,000 fixed in the agreement, as consideration for the repurchase of the land. The defendant stated that the $10,000 was the value of improvements made by him. Under the agreement which he had signed, however, he is not entitled to the value of improvements made, but is entitled to collect for the cost of improvements.

■ When a word is used in an agreement between two parties, and the courts are called upon to interpret the agreement, such word is to be given its ordinary, popular meaning. Section 9-07-09, N.D.C.C., provides that the words used in a contract are to be understood in their ordinary sense. Therefore, we must determine the ordinary meaning of the word "improvements."

■ Webster's Third New International Dictionary defines "improvement" as a permanent addition to, or betterment of, real property that enhances its capital value, that involves the expenditure of labor or money, and that is designed to make the property more useful or valuable as distinguished from ordinary repairs. Applying this ordinary and popular meaning of the word "improvements" to the word as used in the option agreement, it must

be held that what the parties contemplated by using the word "improvements" was improvements which are permanent, lasting, and fixed in character. Clearly, the defendant, by demanding $10,000 for the value of such improvements, was not complying with the terms of the option which he had given to the plaintiffs.

 We find that the option is not indefinite or uncertain because it fails to specify or to list what improvements are covered by the use of the word. The defendant is entitled to be paid what he can show was expended for improvements which were permanent additions to or constituted betterment of the property, which enhanced its capital value, and which were designed to make the property more useful or valuable, as distinguished from ordinary repairs. Following this definition, it is clear from the record that the defendant would be entitled to receive payment of the item of $932.81, the cost of a new roof on the barn. He would be entitled to $157.19 for hauling supplies and for cleaning up after the new roof had been put on the barn; and, finally, he would be entitled to the $100 which he spent for constructing a dike on the land. Other claims made were for improving the general condition of the land, and these, of course, would not come under the heading of "permanent, lasting, and fixed improvements." Any money spent for improving the general condition of the land would be considered as spent in connection with the ordinary husbandry and management of the farm, and would not, we believe, be for an improvement within the meaning of the word as used in the option agreement.

 The trial court further found that the option was silent as to who is to determine the costs of improvements, and that it thus was indefinite and uncertain. Who would be able to furnish information on the costs of improvements which the defendant had made, but the defendant himself? The fact that such costs are left for future determination does not pre-clude specific performance of the contract on grounds of uncertainty. 49 Am.Jur. Specific Performance, Sec. 24, p. 37. We believe the plaintiffs sustained their burden of proof when they proved the existence of the contract and its terms, and that they were ready, able, and willing to perform. It then became the duty of the defendant to prove the costs of improvements which he claims to have made.

 It is contended that the option agreement is indefinite in that it fails to state how the consideration due under the option is to be paid. The mere failure to state the time for payment of moneys due under a purchase agreement will not defeat specific performance of a contract to sell real estate. Where no time for payment of the purchase price is specified, the law implies that payment will be made within a reasonable time. Goldberg v. Mitchell, 318 Mich. 281, 28 N.W.2d 118 (1947).

 Thus, where the agreement states the selling price but fails to stipulate the terms of payment, payment must be made in cash within a reasonable time.

 It next is contended that the agreement is indefinite in that it fails to specify or specifically state by what kind of title the defendant was to convey the land. This contention, we believe, is also without merit. Our statutes provide that an agreement to sell real property binds the seller to execute a conveyance in a form sufficient to pass title to the property. Section 47–10–02, N.D.C.C. Thus the defendant would be required to give a merchantable title. This court has held that a "good and marketable title" means title in fee simple, free from litigation, palpable defects, and grave doubts, a title which will enable the owner not only to hold it in peace but to sell it to a person of reasonable prudence. Coverston v. Egeland (N.D.), 69 N.W.2d 790 (1955).

Other jurisdictions have reached this same conclusion. California has held, on the question of what kind of title a seller

is to furnish in the absence of an express agreement on the quality of title which the seller has to furnish the buyer, that it is presumed that a marketable title must be tendered. Dennis v. Overholtzer, 178 Cal. App.2d 766; 3 Cal.Rptr. 193 (1960).

In the notice which the plaintiffs served upon the defendant advising him that they were exercising their option to purchase the land, they requested that the defendant furnish an abstract of title. The option fails to mention an abstract, and there is no specific requirement on the part of the defendant to furnish an abstract. Defendant contends that this request was a qualification of the conditions of the option, and imposed a new provision. The courts of various jurisdictions are not in agreement on whether a seller, under such circumstances, is obligated to deliver an abstract. Some courts hold that where the contract for sale of real estate does not require the seller to furnish an abstract of title, he is under no obligation to do so. Boekelheide v. Snyder, 71 S.D. 470, 26 N. W.2d 74 (1947); Hudgens v. Olmstead Mfg. Co., 227 Ark. 475, 300 S.W.2d 26 (1957).

On the other hand, it has been held that under the provisions of a land-sale contract agreeing to furnish marketable title, a seller is required to furnish an abstract of title as a condition precedent to the payment of the purchase price. Sobczak v. Kotwicki, 347 Mich. 242, 79 N.W.2d 471 (1956). And it has been held that an optioner is obligated, under an option agreement to furnish evidence of good title upon the exercise of the option, to furnish an abstract of title, and that the furnishing of such evidence of good title is an implied condition of the sale. Department of Public Works and Buildings for and in Behalf of People v. Halls, 63 Ill.App.2d 304, 210 N.E.2d 226 (1965).

■ The record in this case is silent as to whether the plaintiff Peter Overboe had delivered an abstract of title to the defendant when title to the land was de-livered to him. That being true, we cannot require the defendant to redeliver the abstract to the plaintiff. We believe, however, that requesting an abstract did not make conditional the positive acceptance of the option. As was said by the Minnesota Supreme Court, in Podany v. Erickson, 235 Minn. 36, 49 N.W.2d 193 (1951):

"Request for abstract did not render conditional a positive acceptance of offer to sell real estate containing no provision for furnishing abstract where it clearly appeared that request merely looked toward performance of contract of sale and was not intended as a qualification of the acceptance."

We therefore are of the opinion that where the option agreement fails to mention an abstract the seller is under no obligation to submit an abstract, although it is his obligation to furnish merchantable title. We further hold that the request was not made a condition of the acceptance. Asking for the abstract was merely a suggestion on the part of the plaintiffs looking toward the performance of the contract, and exercise of the option.

■ This case comes before us on appeal, demanding trial de novo. As has been pointed out, the action is for specific performance. Specific performance is an extraordinary equitable remedy, governed by equitable principles. The basis of this suit is that, by compelling the parties to do things they have agreed to do, more complete and more perfect justice can be done. 81 C.J.S. Specific Performance, § 1–b, p. 408.

In view of what we have said in this opinion, we find that the plaintiffs made an unconditional acceptance of the defendant's offer as found in the option, and that the plaintiffs are entitled to a decree of specific performance, requiring the defendant to specifically perform the option agreement. We therefore order that the plaintiffs tender to the defendant, within the reason-

able time of ninety days from and after the filing of the remittitur in this case, the sum of $24,000 plus the sum of $1,190, the amount proved by the defendant to have been spent for costs of permanent, lasting, and fixed improvements to the land, and that on tender of such sums the defendant deliver to plaintiffs good and merchantable title in fee simple to the land described in the complaint. In the event the plaintiffs should fail to tender the above sum of $25,190 within the time fixed herein, the option agreement shall be terminated and be of no further effect.

The judgment of the trial court is reversed.

TEIGEN, C. J., and ERICKSTAD and PAULSON, JJ., concur.

I dissent. I would affirm the judgment of the district court.

KNUDSON, Judge.